## INDUSTRIAL COMMISSION v RAU

Ohio Appeals, 2nd Dist, Franklin Co

No 2311.   Decided July 18, 1933

Donald J. Hoskins, Prosecuting Attorney, Columbus, and J. E. Bowman, Assistant Prosecuting Attorney, Columbus, for plaintiff in error.

J. F. Henderson, Columbus, for defendant in error.

## OPINION

By THE COURT

In view of the ground upon which a reversal is sought, we have read the record with unusual care. The record is not long but to quote from the testimony with any substantial effect would require a repetition of a very substantial part of the evidence. This is impractical.

In brief, however, the record discloses that the defendant in error Rau was a man of about sixty years of age and had worked for the Auto Parts Company for some three years as an inspector of rods known as Ford Tie Rods. These rods or tubes were

about 3½ feet long and 11/16 of an inch in thickness. The defendant in error inspected these rods and placed them on a truck which when loaded was taken away by another employee.

It appears that these rods were first welded, then they were trimmed, then they were ground and afterwards inspected by defendant in error. The inspection consisted of taking several of these rods and examining them to ascertain whether the work of the welders, the trimmers and the grinders had been properly performed.

As above stated, the petition alleged that the defendant in error was "engaged in loading hot rods on trucks and that in the performance of his duties he was overcome by the heat and fell over in a faint."

The evidence does not support this claim of the petition. Even the evidence of defendant in error does not support the same. On Page 4, one of the witnesses of defendant in error named Minturn was asked whether these rods were hot or cold. Answer: "Cold."

"Q. Never inspected them when they were hot?
"A. No."

Another witness of defendant in error, Herbert Ault, on pages 33 of the record among other things testified as follows:

"Q. Have you ever stood at the place where Rau worked? A. Yes sir.
"Q. Have you ever noticed any heat from those welders at that place? A. No, I don't believe I did."

On page 36 the nature of the place where the defendant in error worked is described by the witness as being a room about 250 x 300 feet, with sky lights and ventilators in the roof.

The witness Schwartz on page 81, etc., of the record, testified as follows:

"Q. Now by the time the welded objects went through the process of welding, trimming and grinding and when they got down to the inspection table would they be hot at that time? A. No.
"Q. How did the ventilation and atmospheric conditions in the shop there on the last days Mr. Rau worked compare with other working days? A. Always the same."

The witness Nye on page 98 was asked the following question:
"Q. By the time those rods went through the trimmer and the grinder and over to the inspection table, were they hot then or cooled off?
"A. Well, they weren't hot. You could handle them with your bare hands."

The witness Hough on page 100, etc., of the record, among other things, was asked the following question:
"Q. What would be the condition of those rods when they were at the inspection table, whether they had any heat in them or not? A. No, they were cool."

The defendant in error himself on pages 46, etc., of the record was asked the following question:
"Q. Were these rods hot or cold that you were inspecting? A. Sometimes they would be warm and sometimes they would not."

The fainting attack of Mr. Rau is described in detail in the record both by himself and others. This attack occurred as he states after he had been looking around the shop for Ed Rose to take away his truck which was loaded with rods; that he went to his locker and got a peach which he proceeded to eat and as he felt somewhat flushed went to the toilet and was sitting on the toilet when he fainted and fell forward. There is testimony that the defendant in error was somewhat back with his work that morning and a helper was sent to him about ten o'clock and his superior told him to "step on it." The record, however, discloses that 2500 ties a day was his normal day's work and that he and the helper from 10:00 o'clock until 3:00 o'clock in the afternoon when he was taken sick had gotten out some 3500. (Page 48, Record).

Dr. Means on page 68, etc., of the record testifies in detail as to the condition of the defendant in error when he was brought to the University Hospital and of the fact that he continued to treat him as long as he remained in the hospital. On page 70 of the record the following question was asked:

"Q. Did you diagnose the case, Doctor?
"A. I diagnosed his case as gastric ulcer, yes, sir."

Considerable evidence was introduced in reference to the heat on this particular day and also in reference to the heat in the building in question. We think it is sufficient to say there is nothing in this line

of evidence which was not common to all other employees and in fact many of the other employees were subjected to much greater heat than the defendant in error.

In the absence of a motion by plaintiff in error for a directed verdict at the close of the testimony of the plaintiff below, or at the close of all the testimony, we would not feel warranted in passing upon the question as to whether the injuries claimed to have been received by defendant in error do or do not fall within the provisions of the Workmen's Compensation Law of Ohio.

We call counsel's attention, however, to the recent decision of our Supreme Court in the case of Industrial Commission of Ohio v Franken, reported in Ohio Bar Assn. Reports of date May 1st, 1933.

The second paragraph of the syllabus of this decision is as follows:

"2. The term 'injury' as used in the Workmen's Compensation Law of Ohio comprehends only such injuries as are accidental in their origin and cause."

Without quoting further from the testimony, we are unanimously of the opinion that the verdict in this case is clearly against the manifest weight of the testimony and that the judgment must be reversed for that reason.

Judgment reversed and cause remanded.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.